NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0527n.06

No. 09-3976

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 02, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GARY HARRIS, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SUTTON and COOK, Circuit Judges; GREER, District Judge.[*]

SUTTON, Circuit Judge. In many respects, Gary Harris epitomizes the American dream. Despite a difficult childhood—cycling in and out of juvenile detention and foster homes and leaving school after the sixth grade—he built a successful business network, at one point amassing a net worth of $11 million. What looks like a rags-to-riches story, however, has a not-so-happy subplot: Harris insists on not paying his taxes. That insistence continued even after Harris pleaded guilty to a series of tax-related offenses and spent several years in prison. As a result, a jury convicted him of new tax-related charges, and the court sent him back to prison for another 110 months. Harris now raises various challenges to his sentence. We affirm in most respects but remand for the limited purpose of allowing the court to correct one mistake made in announcing the sentence.

---

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

I.

In 1996, a federal grand jury indicted Harris for various tax and RICO offenses. He pleaded guilty, served four years in prison and paid $300,000 in back taxes. When Harris violated the terms of his plea, thereby releasing the government from its non-prosecution agreement, a grand jury indicted him again, this time for conspiracy to defraud the IRS and to commit other tax offenses. A jury found Harris guilty, and the district court sentenced him to 151 months in prison.

We affirmed the conviction, rejecting the argument that the plea agreement barred a second prosecution. *See United States v. Harris*, 200 F. App'x 472, 476, 478 (6th Cir. 2006). But we vacated and remanded for resentencing in light of *Booker*, as well as to correct various guidelines-calculation errors. The district court held three separate sentencing hearings to permit the government to present a new estimate of tax loss. Harris chose to proceed *pro se* (with standby counsel), and he testified and argued on his own behalf. The court adopted the government's tax estimates, calculated a revised guidelines range of 110 to 137 months and sentenced him to 110 months.

II.

Harris challenges the district court's most recent calculation of his gross income, used to determine his base offense level, on several grounds. His first theory has nothing to do with the calculation itself but with the process that preceded it. At the resentencing hearing, after the government presented its evidence, Harris responded by maintaining his innocence, alleging a

government conspiracy to seize his property and complaining that he needed access to various records in the government's possession. The government responded that Harris's attorney had access to all of the records and that they had no bearing on the sentence anyway.

No due process violation occurred. As shown by one lengthy colloquy at the hearing, among many other colloquies (and some soliloquies), Harris's request for records had little to do with his sentencing and everything to do with challenging his conviction and seeking to resolve his outstanding tax issues with the IRS. Here is how Harris put it:

> **Court**: Do you want the records to prepare your tax returns?
>
> **Harris**: That's right. I want to show that their records are wrong.
>
> **Court**: Okay.
>
> **Harris**: But I don't want to hold your sentencing up. If you—I am saying that I am entitled to the records regardless.
>
> **Court**: I'm going to order them returned, but I want to be sure you are not saying I want those records before you complete your sentencing hearing.
>
> **Harris**: No, I'm not going to say this. . . .

R.517 at 69–70. At the same time the court agreed that the government should return Harris's tax records to allow him to file new returns, the court confirmed with Harris that he did not need these records for resentencing. As the court later put it, "no evidence whatsoever" shows "that [Harris's] inability to obtain any records has any bearing on his ability to prove any deductions, expenses. Unfortunately, I believe that is simply a red herring." R.548 at 7.

Harris offers no tenable reason for altering this ruling. As Harris himself recognized during the hearing, the records have little to do with the income calculations, making it difficult to say that the denial of access to them violated due process. Confirming the point, Harris presented many exhibits that did bear on the various expenses that (he alleged) should have been deducted from the income estimate. Access to his records would not have changed the proceeding.

III.

Harris contests the district court's decision to quash 20 witness subpoenas that he issued prior to resentencing. The district court held a telephone conference allowing Harris to describe what these witnesses would say. The court quashed all 20 subpoenas, reasoning that Harris had failed to comply with the rules of service (by failing to tender a witness-attendance fee and mileage allowance), *see* Fed. R. Crim. P. 17(d), and that any witness testimony would be immaterial or duplicative.

We review a district court's decision to quash a subpoena for an abuse of discretion. *See United States v. Theunick*, __ F.3d__, 2011 WL 2566883, at *8 (6th Cir. June 30, 2011). A court may consider a variety of factors in reviewing such motions, including the most obvious: whether the witnesses have anything material to add to the hearing. *See United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990).

Harris does not dispute his failure to comply with the procedural requirements of Rule 17(d), which is reason enough to quash the subpoenas. *See United States v. Moore*, 225 F.3d 637, 644 n.2

(6th Cir. 2000). But even if Harris had complied with Rule 17(d), the court would not have abused its discretion in ruling that the requested testimony was irrelevant or duplicative. Harris sought the testimony for a variety of reasons: so that an IRS agent could testify that Harris did not submit a false tax filing (which led to the violation of his plea agreement); so that another agent could testify why the IRS had not released his records; or so that a former lawyer of his could testify that Harris had tried in good faith to resolve his tax issues. None of this proposed testimony had anything to do with calculating tax loss. It only would have facilitated Harris's efforts to relitigate issues the courts decided against him at trial and on appeal.

A few witnesses, we recognize, might have provided testimony related to gross income. But, as the court correctly held, they would have corroborated only what Harris, a sophisticated and "extremely intelligent" businessman, R.548 at 23, already knew. No abuse of discretion occurred.

IV.

Harris separately challenges the procedural reasonableness of his sentence, maintaining that the court should have adopted a lower estimate of gross income. A district court's tax-loss findings receive deferential review—and with good reason. The Sentencing Commission does not assess and collect taxes and does not demand perfect accuracy in calculating income. The "broad tax-loss bands of the guidelines" tend to undermine "the contention that a given tax-loss finding was necessary to the sentence." *Kosinski v. Comm'r*, 541 F.3d 671, 676 (6th Cir. 2008). The guidelines recognize that "the amount of the tax loss may be uncertain" and that "indirect methods of proof" may be used,

requiring only that the sentencing court "make a reasonable estimate based on the available facts." U.S.S.G. § 2T1.1 app. n.1. "Loss need not be determined with precision"; it can "be founded on general factors such as the nature and duration of the fraud." *United States v. Milligan*, 17 F.3d 177, 183 (6th Cir. 1994).

No error, clear or otherwise, occurred. The court found that the government's estimates were "supported by the record," R.548 at 8, and "exceedingly conservative," R.542 at 2. Several tax and accounting experts supported the government's estimate. *See United States v. Haque*, 315 F. App'x 510, 529 (6th Cir. 2009). And after nearly four weeks of trial and one prior round of sentencing, the district court of course had a better vantage point than we do to assess this testimony and record. By adopting the government's estimate as the most reasonable one, the court did not clearly err.

Harris points to instances when the court could have deducted expenses from the income estimate. Yet the court acknowledged the arguments and found that the proposed deductions lacked "evidence of any kind." R.548 at 7. The government, it is true, revised its estimate of gross income several times. But each revision reduced Harris's gross income, and all of the government's figures turned on record evidence. Only "out of an abundance of caution" did the court embrace the government's estimate, even though it believed that a "close review of the entire record" suggested that a "substantially higher total unreported income could be attributed to Harris." R.542 at 2. Rather than undermining the government's estimate, its multiple revisions—all in Harris's favor—suggest a good faith effort to provide a "reasonable estimate" in difficult circumstances.

Harris argues that the court did not address some of his objections. *See* Fed. R. Crim. P. 32(i)(3)(B). Not true. The court rejected each of Harris's factual objections as speculative and immaterial to his sentence and adopted instead the government's estimates. All of this satisfied Rule 32. *See United States v. Tarwater*, 308 F.3d 494, 518 (6th Cir. 2002).

Harris urges us to wade into a circuit split over whether taxpayers may use "unclaimed" deductions to reduce gross income under § 2T1.1. *See United States v. Blevins*, 542 F.3d 1200, 1202 (8th Cir. 2008). Yet the issue has no bearing on this case. The district court found that Harris failed to establish a basis for using *any* deductions, whether claimed or unclaimed, in lowering his income.

V.

That leaves one issue on which the parties agree: the district judge misspoke in announcing one part of the sentence. The judge sentenced Harris to "110 months . . . on each count to be served consecutively," R.548 at 24, which would exceed the statutory maximum, rather than two 55-month sentences served consecutively. Although the court corrected itself, this came too late under Criminal Rule 35(a)'s brief window for correcting sentencing dispositions.

Harris argues that we should issue a general remand, and he requests a full-blown resentencing, including the opportunity for allocution. *See United States v. Garcia-Robles*, 640 F.3d 159, 165–66 (6th Cir. 2011). We decline the invitation. We have affirmed Harris's sentence in all other respects, and a limited remand giving the district court another opportunity to announce its sentence, both with respect to the length of the prison sentence and the length of supervised release,

will suffice to correct this mistake.  *See United States v. O'Dell*, 320 F.3d 674, 679–81 (6th Cir.

2003).

VI.

For these reasons, we affirm the district court's sentence but remand for the limited purpose

of allowing the court to clarify its sentence.