NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0235n.06

No. 11-5985

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Mar 06, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| LUTHER T. SMITH, JR., | ) | THE MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | | OPINION |

Before: COLE and DONALD, Circuit Judges, and RUSSELL, District Judge.[*]

**Bernice B. Donald, Circuit Judge**. Luther T. Smith, Jr. was found guilty of two counts of

tax evasion for tax years 2001 and 2002, in violation of 26 U.S.C. § 7201, and one count of filing

a false income tax return for tax year 2003, in violation of 26 U.S.C. § 7206(1). Smith now appeals

the district court's exclusion of evidence, its calculation of the tax loss, the imposition of a two-level

sentencing enhancement for failing to report over $10,000 in income derived from criminal activity,

and the imposition of a two-level sentencing enhancement for obstruction of justice. For the

following reasons, we affirm in part and reverse in part.

---

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of
Kentucky, sitting by designation.

I.

Luther Smith was a life insurance salesman who owned and operated two corporations used to conduct his life insurance business, The Broker's Edge and Eagle Financial Group. Smith conducted his insurance business out of Nashville, Tennessee. After receiving commissions from the insurance companies for his sale of insurance policies, Smith wrote checks from his personal account to his two companies that he classified as loans. He deducted these amounts on his Schedules C as commission expenses.

William McSwiney prepared Smith's personal tax returns for the years 2001 through 2003. The 2001 and 2003 tax returns were filed with the Internal Revenue Service (IRS), but the 2002 return was not filed.

In 2004, the IRS audited Smith. During the audit, Smith informed IRS Agent Robert Hissam that his companies did not pay any of his personal expenses. Agent Hissam discovered that Smith had submitted unfiled tax Forms 1040 for the years 2000 and 2001 to Union Planters Bank in an effort to obtain a loan. On these forms, he reported more income than he had reported to the IRS. The IRS subsequently investigated Smith for failing to report income from his insurance businesses. On July 29, 2009, Smith was indicted on two counts of tax evasion for tax years 2001 and 2003 and one count of filing a fraudulent tax return for tax year 2003.

At trial, IRS Agent Suzanne Poshedley testified that she conducted an extensive investigation of Smith's finances. Agent Poshedley identified personal expenses, such as home remodeling and

his children's tuition, that were paid by his companies. Her investigation ultimately uncovered unreported income of $91,788.06 for 2001, $613,512.99 for 2002, and $462,746.38 for 2003.

Smith's sole witness at trial was his tax preparer, McSwiney. McSwiney testified as to his preparation of Smith's returns. He also testified as to a chart, Defense Exhibit 2, summarizing loans made to Smith's companies from Smith's personal accounts. After determining that the source of information presented in the chart was unreliable, the district court struck the chart and McSwiney's related testimony.

On January 19, 2011, the jury convicted Smith on all counts. The district court sentenced him to ninety-six months' imprisonment. He now appeals.

II

Smith first challenges the district court's exclusion of Defense Exhibit 2 and McSwiney's testimony as it related to the exhibit.

We review a district court's exclusion of evidence for an abuse of discretion. *United States v. Ham*, 628 F.3d 801, 804 (6th Cir. 2011). An abuse of discretion occurs when "we are firmly convinced that a mistake has been made, i.e., when we are left with a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Heavrin*, 330 F.3d 723, 727 (6th Cir. 2003) (internal quotations omitted).

The district court did not indicate which Rule of Evidence required the exclusion. Smith argues that it was excluded under Rule 602, which prohibits the admission of evidence for which the witness does not have personal knowledge. Fed. R. Evid. 602. The government, however, argues that the district court properly excluded the evidence under Rule 1006, which permits summaries of voluminous documents, Fed. R. Evid. 1006, but only if it satisfies certain requirements. *See United States v. Jamieson*, 427 F.3d 394, 409 (6th Cir. 2006).

Exclusion was proper under both Rules. The government correctly points out that this court requires summaries admitted under Rule 1006 to meet five criteria:

> (1) the underlying documents must be so voluminous that they cannot be conveniently examined in court, (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place, (3) the underlying documents must be admissible in evidence, (4) the summary must be accurate and nonprejudicial, and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation.

*Id.* at 409. There are two primary issues with admission of Defense Exhibit 2. First, the chart, captioned "loans and repayments," was purported to summarize loans that Smith made to his corporations. However, Smith did not make available the actual loan agreements, contrary to the second criteria set forth in *Jamieson*. Second, it is unclear who actually prepared the chart. At trial, McSwiney testified that he did not create the summary but that it was instead provided to him by Smith and defense counsel. When the government challenged the admissibility of the chart based on the fact that McSwiney did not prepare it, defense counsel told the court that "regardless of what Mr. McSwiney said, . . . he did not receive that document from me." Thus, the district court did not

exclude the exhibit *sua sponte*, as Smith contends, but instead responded to the government's challenge and appropriately determined that the document was unreliable as to the source, and therefore contrary to the fifth *Jamieson* criteria.

While the chart was properly excluded under Rule 1006, McSwiney's testimony as it pertained to the chart was properly excluded under Rule 602 as well. "The threshold for Rule 602 is low[,]" and "[t]estimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about." *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990). McSwiney testified that he was not provided with the loan documents that were the subject of the chart and that his determination that they were loans was based solely on what Smith had told him. Because McSwiney's testimony was based on Smith's hearsay statements, the district court did not abuse its discretion in determining that no reasonable juror could believe that McSwiney had personal knowledge of the loans, and, thus, exclusion was proper under Rule 602.

Smith further argues that even if exclusion was proper, the district court's instruction to the jury to disregard the chart and McSwiney's corresponding testimony was overly broad and confusing and effectively excluded his entire theory of defense.[1] When reviewing jury instructions, we must determine that "the instructions show no tendency to confuse or mislead the jury." *Miller v. Utica Mill Specialty Mach. Co., Inc.*, 731 F.2d 305, 307 (6th Cir. 1984). When instructing the jury, the

---

[1]We note that Smith has not raised a deprivation of the right to present a defense claim on appeal.

district court said, "I want to announce that Defendant's Exhibit Number 2 that was cited during the testimony of Mr. McSwiney has been stricken by the Court. You will not consider that exhibit nor any testimony based solely on that exhibit."

Contrary to Smith's assertion, the court did not instruct the jury to disregard McSwiney's testimony entirely. Indeed, McSwiney testified regarding his preparation of Smith's tax returns for the years at issue, and this testimony was not stricken. By the plain language of the instruction, the district court made clear that only Defense Exhibit 2 and McSwiney's testimony referring to that exhibit had been stricken. "The jury is presumed to have followed the instructions correctly as given." *Id*. The instruction, as given, was not overly broad or confusing.

Smith's remaining arguments against exclusion - that the prosecution improperly commented on the lack of evidence produced and that the district court knew of the type of defense that would be presented - are without merit and lack supporting authority.

III.

Smith next argues that the district court erred in calculating the tax loss for sentencing purposes. He claims that the district court improperly rejected the evidence at trial and instead used an unreliable document as the basis for the calculation. We review the district court's factual findings regarding the tax loss for clear error. *United States v. Goosby*, 523 F.3d 632, 639 (6th Cir. 2008). "Findings under the Sentencing Guidelines that increase a defendant's sentence must be based on reliable information and supported by a preponderance of the evidence." *Id*. The district

court's tax loss findings are entitled to deference. *United States v. Webb*, 335 F.3d 537, 537 (6th Cir. 2003); *United States v. Harris*, 433 F. App'x 383, 386 (6th Cir. 2011).

Under the Sentencing Guidelines, a defendant's base offense level for tax evasion and filing a fraudulent return is determined by the amount of the tax loss. The tax loss is defined as "the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." U.S.S.G. § 2T1.1(a)(1), (c)(1). The tax loss under this section is determined by using the same rules applicable to any other sentencing factor. U.S.S.G. § 2T1.1 app. n.1. The Guidelines permit the court to "make a reasonable estimate based on the available facts[,]" and indirect methods of proof are permitted. *Id*. Thus, contrary to Smith's contention, the tax loss may be calculated using any facts before the court, not just the figure Smith believes was proved at trial.

At the sentencing hearing, the government submitted that, for tax loss calculation purposes, the court should consider the tax returns that Smith presented to Union Planters Bank in order to obtain loans. The record shows that the commissions the insurance companies paid to Smith matched the amount of business income that he reported on the tax returns submitted to Union Planters Bank. However, unlike the tax returns Smith filed with the IRS, which included deductions for the commissions he paid to his corporations, the returns submitted to Union Planters Bank did not include these deductions, and, thus reported higher taxable income and taxes due. Agent Poshedley testified that Smith paid the commissions to his corporations so that they would not appear on his personal tax return, and the corporations never filed tax returns reporting that income,

thus taxes were never paid on that money. She further testified that because the government proved at trial that Smith had personal expenditures of $1.2 million, and his filed tax returns showed little to no taxable income, the returns given to Union Planters Bank were more reflective of Smith's actual income. Moreover, Agent Poshedley indicated that the information presented at trial was not intended to encompass all evidence of Smith's income but was instead presented to show how Smith funneled money between his personal accounts and his corporations to evade his tax obligations.

Relying on this information, the district court determined that the income represented on the returns submitted to Union Planters Bank should be included in the calculation of the tax loss. Based on the foregoing, we find that the district court's determination was reasonable in light of the available facts and was not "outside the realm of permissible computations." *United States v. Jackson*, 25 F.3d 327, 330 (6th Cir. 1994).

IV.

Smith also argues that the district court erred in imposing a two-level sentencing enhancement based on its finding that he failed to report over $10,000 in income derived from criminal activity. Smith asserts that the criminal activity enhancement, U.S.S.G. § 2T1.1(b)(1), cannot be applied to the practice of insurance rebating because rebating, while illegal in Tennessee, is not a classified as a crime, but is instead a civil offense.

We review the district court's factual findings for clear error. *United States v. Cromer*, 93 F.3d 1271, 1278 (6th Cir. 1996). "Whether facts found by the district court warrant the application

of a particular guideline is a legal question and is to be reviewed de novo." *Id*. (internal quotations omitted).

In 2005, the Tennessee Department of Commerce and Insurance instituted an action against Smith for practicing what is known as insurance "rebating." "Rebating" occurs when an insurance agent induces an individual to purchase a policy by promising to return to them a portion of the premium. Tenn. Code Ann. § 56-8-104(8) (2009). In Tennessee, "rebating" is considered an unfair trade practice and is illegal, but not criminal. *See id*. The State of Tennessee ultimately determined that Smith engaged in "rebating" and revoked his insurance agent's license. The Tennessee Court of Appeals affirmed this decision.

Based upon the "rebating" scheme, the government sought a two-level sentencing enhancement, arguing that Smith's conduct constituted wire fraud under 18 U.S.C. § 1343. At the sentencing hearing, Smith argued that because "rebating" is not a crime in Tennessee, he is not subject to the enhancement. The Guidelines, however, are not limited to state crimes. Section 2T1.1(b)(1), Application Note 3 defines criminal activity as "any conduct constituting a criminal offense under federal, state, local, or foreign law." Thus, if Smith's actions constitute wire fraud under 18 U.S.C. § 1343, the enhancement is applicable to him.

Wire fraud requires that an individual 1) devise a scheme to defraud; 2) use interstate wire communication in furtherance of the scheme; and 3) intend to deprive a victim of money or property. *United States v. Faulkenberry*, 614 F.3d 573, 580-81 (6th Cir. 2010). The government contends that

Smith defrauded the insurance companies by inducing them to issue policies that were ultimately not paid for and because the funds were transferred via wire, Smith's actions constitute wire fraud under § 1343. It is uncontested that the commissions that the insurance companies paid to Smith were transferred using interstate wire communication. Thus, the issue is whether the first and third elements of wire fraud are met.

The government argues that Smith's "rebating" actions constitute a scheme to defraud. In support of this contention, it presented to the district court Agent Poshedley's testimony that one of the insurance companies with which Smith had dealings indicated that its decision to issue the policies would have been affected if it had known that Smith was engaging in "rebating." The government insists that this omission was a material misrepresentation sufficient to support the element of fraud. However, the insurance company with which Agent Poshedley spoke did not indicate that it would not have issued the policies, and the government does not put forth any evidence as to *how* the company's decision would have been affected.

The government also argues that the "rebating" resulted in a deprivation of property. In so doing, it relies on a statement in the PSR that, "the majority of these policies lapsed for non-payment." The government asks us to take a leap that we are unwilling to make. There is simply no evidence linking the non-payments to the "rebating" conduct. Even if it can be argued that Smith devised a scheme to defraud, the government has failed to prove by a preponderance of the evidence that there was an intention to deprive the insurance companies as a result of that scheme. In fact, in illustrating the practice of "rebating" at the sentencing hearing, the government's witness used as an

example one of the insurance companies that Smith dealt with and testified that the company received all of the money it was owed, which would tend to weigh against a finding that Smith intended to deprive the company of money.

Not only has the government failed to cite any case law supporting its argument that "rebating" does in fact constitute wire fraud, the proof offered is too speculative to uphold the enhancement. Accordingly, the district court erred in its application.

V.

Lastly, Smith challenges the district court's imposition of a two-level sentencing enhancement for obstruction of justice. "We review the district court's factual findings for clear error and the court's determination of whether the facts constitute an obstruction of justice *de novo*." *United States v. Carson*, 560 F.3d 566, 589 (6th Cir. 2009).

Pursuant to U.S.S.G. § 3C1.1, a court may apply a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." The district court found that a document was tendered at trial for which the witness, McSwiney, had no personal knowledge, and, as a result, "there was absolutely no factual basis" for the evidence. In so finding, the district court relied on *United States v. Parrott*, 148 F.3d 629, 634 (6th Cir. 1998), and determined that the enhancement was applicable. The district court's reliance on *Parrott* appears to be misplaced. In *Parrott*, the defendant was found to have submitted false documents to the court. Here, the basis for the district court's ruling was that the source of the document was

- 11 -

unreliable in that a proper foundation had not been laid as to who prepared it. Thus, the district court never actually found that Smith or McSwiney produced a "false, altered, or counterfeit document." U.S.S.G. § 3C1.1 at app. n.4(C).

Smith assumes that because the district court indicated that the document did not have a factual basis, the enhancement rests on a finding of perjury. This assumption does not take into account the other examples of covered conduct in § 3C1.1. A finding of perjury will trigger the enhancement, *see id*. at app. n.4(B); however, the commentary clearly instructs that perjury is not the only obstructive conduct for which the enhancement may be applied. "Obstructive conduct can vary widely in nature, degree of planning, and seriousness." *Id*. at app. n.3. The Guidelines indicate that a court may consider conduct similar to the listed examples when applying the enhancement. *See id*. Calling a witness who has no personal knowledge of what he is testifying to is not specifically listed as an example in the Guidelines.

Producing a witness who cannot lay the proper foundation for introduction of a document is not obstruction of justice in this case. There is no evidence that the document was false, but merely that this witness could not attest to its accuracy. On cross-examination, the witness admitted he had no personal knowledge of the factual background needed to support introduction of the document.

In addition, during the preparation of the presentence report, Smith, knowing his insurance license was to be revoked, misrepresented to the probation officer that he had a valid license.

Providing "materially false information to a probation officer in respect to a presentence or other investigation for the court" can be obstructive conduct. U.S.S.G. § 3C1.1 at app. n.4(H). This was false information but it was not "materially false information." It did not affect guilt or innocence nor did it affect the accurate calculation of the application offense level. It was not relied on by the district court in determining the proper sentence. It had no effect on the sentencing process or result. In the peculiar situation of this case, it was an abuse of discretion to apply the obstruction of justice enhancement.

VI.

Given the foregoing, we affirm the judgment of the district court as to the exclusion of the evidence and the calculation of the tax loss, but reverse as to the application of the enhancement for failing to report over $10,000 in income derived from criminal activity and the application of the obstruction of justice enhancement.