# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2007

_____

United States of America

*Plaintiff - Appellee*

v.

Antonio Morales Chavez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: May 16, 2016
Filed: August 15, 2016

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

Antonio Morales Chavez (Morales) claims the district court[1] erred in finding he obstructed justice and did not accept responsibility for his crimes. We disagree.

_____

[1]The Honorable John R. Tunheim became Chief Judge of the United States District Court for the District of Minnesota on July 1, 2015.

## I.    BACKGROUND

Morales was caught selling methamphetamine in Melrose, Minnesota, when his buyer turned out to be a police informant. A few days later, he was charged by complaint and released on bond. He then left for Mexico. He says he went to take care of his mother, who had cancer and was facing surgery, and he did not tell the authorities because he was afraid they would not let him go. That was in 2004.

Morales returned to the United States in 2007, left again, and came back in 2008. Both times he reentered the country, he was inspected and admitted at the border after showing his lawful permanent resident card. After his return, he lived and worked in California, where he paid taxes and child support under his real name.

In 2013, Morales sent his name and fingerprints to the FBI for a criminal background check to see if he had an outstanding warrant.[2] He did. A bond-revocation hearing had been scheduled and a warrant issued for his arrest around the time he absconded to Mexico in 2004. Morales was then detained in the Eastern District of California and eventually transferred back to the District of Minnesota, where he stood trial and was found guilty of conspiring to distribute, possessing with the intent to distribute, and distributing methamphetamine, see 21 U.S.C. §§ 841(a)(1), (b)(1), 846; see also 18 U.S.C. § 2(a) (accomplice liability).

In determining Morales's advisory sentence under the United States Sentencing Guidelines (U.S.S.G. or Guidelines), the district court increased his offense level by two levels for obstructing justice, see U.S.S.G. § 3C1.1, and refused to decrease it by two levels for accepting responsibility, see id. § 3E1.1(a). Morales unsuccessfully

[2]Some of the dates in the record and the parties' briefs with respect to this chapter of Morales's story do not line up. As far as we can tell, the inconsistency stems from a paragraph in the presentence investigation report that mistakenly dated Morales's background check to 2014 rather than 2013. We discern no actual dispute or uncertainty about how long Morales was on the lam.

contested both points. The Guidelines calculations resulted in an advisory range of 121 to 151 months in prison. The district court varied downward and sentenced Morales to 96 months in prison and three years of supervised release. On appeal, see 28 U.S.C. § 1291 (appellate jurisdiction), Morales challenges the rulings on the two adjustments.

## II.    DISCUSSION

With respect to the obstruction-of-justice adjustment, Morales's argument is not about what he did—in short, jumped bond and then lived abroad and in another state for nearly nine years—but whether his conduct satisfies the relevant section of the Guidelines. We review that legal question de novo. See United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005).

Guidelines § 3C1.1(1) calls for a two-level increase if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the [defendant's] instant offense of conviction." Morales says his conduct was not willful, because he left to be with his sick mother, not to interfere with the investigation or prosecution of his case. Cf., e.g., United States v. Collins, 754 F.3d 626, 629 (8th Cir. 2014) ("In order to act willfully [for purposes of § 3C1.1], the defendant must 'consciously act with the purpose of obstructing justice.'" (quoting United States v. Watts, 940 F.2d 332, 332-33 (8th Cir. 1991))). But "[a] district court can find that a defendant consciously acts with the purpose of obstructing justice"—that is, acts willfully—"when his 'misconduct occurs with knowledge of an investigation, or at least with a correct belief that an investigation is probably underway.'" Id. at 629-30 (quoting United States v. Dierling, 131 F.3d 722, 738 (8th Cir. 1997)). After being arrested, consenting to searches of his trailer home and car, providing a detailed account of his activities to a police investigator, and being charged by complaint, Morales unquestionably knew the authorities were building a case against him. Whatever Morales's reasons for initially going to Mexico, they do

-3-

not explain staying away for years afterward. Indeed, Morales's eventual decision to have the FBI check for outstanding warrants demonstrates his awareness that, notwithstanding his consistent use of his real name, his unexplained disappearance and continued absence from Minnesota might be standing in the way of efforts to bring him to justice.

Morales points out that an application note to § 3C1.1 lists "willfully failing to appear, *as ordered*, for a judicial proceeding" as an "example[] of the types of conduct to which this adjustment applies." U.S.S.G. § 3C1.1 application n.4(E) (emphasis added). Because he left the country before being ordered to make any appearances, Morales reasons, his conduct falls outside that provision. That may be true, but the list of examples in the note is explicitly "non-exhaustive," id., and we have repeatedly upheld adjustments under § 3C1.1 for defendants who, like Morales, did not have any proceedings scheduled when they left town.[3] See, e.g., Billingsley, 160 F.3d at 507; United States v. Eagle, 133 F.3d 608, 611 (8th Cir. 1998). And the crux of how Morales obstructed justice was not just that he skipped a particular hearing, but that by living abroad and then resettling across the country he delayed the resolution of his case by almost a decade. The two-level increase was justified.

---

[3]We are also unpersuaded by Morales's theory that because he had not yet been indicted his departure for Mexico was analogous to "avoiding or fleeing from arrest," which another application note says generally should not trigger an offense-level increase. See U.S.S.G. § 3C1.1 application n.5(D). We have explained that flight "does not warrant enhancement because it is more of an initial instinctive reaction than willful obstruction of justice" and "generally occurs without knowledge that an investigation is underway." United States v. Hare, 49 F.3d 447, 453 (8th Cir. 1995). The same is not true of Morales's conduct, so his analogy fails, and in any event his position is foreclosed by our past decisions, see, e.g., United States v. Billingsley, 160 F.3d 502, 507 (8th Cir. 1998) (concluding "the post-arrest, pre-indictment flight of a defendant who is not in custody falls within Section 3C1.1"); Hare, 49 F.3d at 450, 453.

As for the two-level decrease Morales sought, generally "[c]onduct resulting in an enhancement under § 3C1.1 . . . indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 application n.4. The adjustment is also usually inapplicable "to a defendant who," like Morales, "puts the government to its burden of proof at trial by denying the essential factual elements of guilt." Id. § 3E1.1 application n.2. There may be "rare" exceptions to these rules in "extraordinary cases," id. § 3E1.1 application nn.2, 4, but Morales has not convinced us it was a clear error for the district court not to recognize his as such a special case. See, e.g., United States v. Muro, 357 F.3d 743, 744 (8th Cir. 2004) (per curiam) (standard of review). Morales's cooperation with the police both times he was caught does not outweigh the years of obstruction he caused in between. Cf. id. at 744-45 (upholding the denial of an adjustment because the defendant "willfully chose the course of conduct that obstructed justice instead of choosing other options," "failed to take any affirmative action to confirm his acceptance of responsibility after he fled," and "merely provided an excuse for his flight"). And Morales's explanation that he felt compelled to go to trial despite acknowledging his guilt because "any plea agreement would . . . have likely required [him] to agree that he was not entitled to acceptance of responsibility under U.S.S.G. §3E1.1" anyway, besides being entirely speculative, apparently rests on the premise that the only way he could plead guilty was by entering into a plea bargain with the government, which is simply false, see, e.g., United States v. Trevino, No. 15-1534, ___ F.3d ___, ___, 2016 WL 3844851, at *1 (8th Cir. July 14, 2016) (guilty plea without plea agreement); see also Fed. R. Crim. P. 11(a)(1) ("A defendant may plead . . . guilty.").

## III. CONCLUSION

The district court did not err in determining that the obstruction-of-justice adjustment did apply to Morales and the acceptance-of-responsibility adjustment did not. Morales's sentence is affirmed.

_____