RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 18-1592

TIRRELL PERRY THOMAS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:17-cr-00176-2—Paul Lewis Maloney, District Judge.

Decided and Filed: August 6, 2019

Before: McKEAGUE, KETHLEDGE, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Ray Edward Richards, II, RICHARDS & ASSOCIATES, PLLC, Troy, Michigan, for Appellant. Vito S. Solitro, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

MURPHY, Circuit Judge. This case spotlights the hazards for defendants when they do not tell the truth to the probation officers who prepare their presentence reports for sentencing. After pleading guilty to bank fraud, Tirrell Thomas needed only to accept responsibility for his actions (and not obfuscate) to obtain a guidelines range between 46 and 57 months' imprisonment. Yet Thomas lied about his involvement in the fraud to the probation officer working on his presentence report. So, when calculating his guidelines range, the court rejected

an acceptance-of-responsibility reduction and applied an obstruction-of-justice enhancement. Thomas's lies bumped up his guidelines range to between 70 and 87 months. Finding that range still too low, the district court sentenced Thomas to 102 months. Seeing no procedural or substantive error with this sentence, we affirm.

I.

As a courtesy to its customers, Bank of America advances them funds whenever they deposit checks. The bank credits a check's value to an account immediately without any delay for the time it takes the check to clear. During this "float" period, the bank permits an accountholder to withdraw the funds while the bank confirms the check's validity.

Thomas turned this valuable service into a vehicle to defraud. He led the Michigan side of a conspiracy to steal from Bank of America; his cousin, Earl Lee Cobb, led the Illinois side. (We recently affirmed Cobb's sentence. *United States v. Cobb*, 766 F. App'x 226, 227 (6th Cir. 2019).) The scheme operated as follows: In Michigan, Thomas or other "recruiters" would enlist Bank of America customers as coconspirators. The recruiters would give the customers' information (account numbers, debit card numbers, and PINs) to the Illinois conspirators. The Illinois conspirators would steal corporate checks, alter the checks to list the customers as payees, and deposit the checks into the customers' accounts. Back in Michigan, Thomas and others would promptly withdraw the funds before the bank uncovered that the checks were bad. Thomas would then divvy up the funds among the conspirators. All told, he participated in fraud causing bank losses of $214,286.03.

In 2017, the United States charged Thomas, Cobb, and 17 others in a 28-count indictment. The first count charged all defendants with a conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344(2) and 1349. The rest charged subgroups of defendants with bank fraud for individual transactions, in violation of 18 U.S.C. §§ 2 and 1344(2). The indictment listed Thomas on 25 counts, second only to Cobb. He ultimately pleaded guilty to the conspiracy count and to one count of bank fraud.

If Thomas's deception had ended with this fraud, his offense level and criminal history would have generated a guidelines range between 46 and 57 months. But it did not end there.

His probation officer found that he lied during his presentence interview. Thomas denied leading the Michigan cohort, denied recruiting others, and denied knowing of Cobb's role. (Cobb followed the same approach, falsely claiming that he had not spoken to Thomas about the scheme. *Cobb*, 766 F. App'x at 228.) The probation officer thus recommended that the court deny an offense-level reduction for acceptance of responsibility. U.S.S.G. § 3E1.1 (2016).

After learning of the lies, the United States asked for an obstruction enhancement as well. U.S.S.G. § 3C1.1. In support, it compiled evidence—including witness statements and cell-phone records—showing that Thomas oversaw the Michigan recruiters and facilitated the withdrawals. Thomas also regularly spoke with Cobb on days with fraudulent activity and traveled to deliver money to Cobb at preplanned locations.

At sentencing, Thomas argued that he should receive the acceptance-of-responsibility reduction (and avoid the obstruction enhancement) because any lies did not affect the guidelines calculations and so were immaterial. The district court disagreed. It found that Thomas lied to the probation officer about his knowledge of Cobb's role and the extent of his recruiting. The court thus applied the obstruction enhancement and declined the acceptance-of-responsibility reduction, which produced a guidelines range between 70 and 87 months. It concluded that this range was insufficient under the sentencing factors in 18 U.S.C. § 3553(a). The court thus imposed an above-guidelines 102-month sentence.

II.

Thomas now challenges: (1) the obstruction enhancement; (2) the denial of the acceptance-of-responsibility reduction; and (3) the upward variance from the guidelines range.

1. *Obstruction*. Thomas argues that the district court erred by applying the obstruction enhancement in U.S.S.G. § 3C1.1. Before reaching the merits, we note that our court has sent mixed messages on the standard of review for this guideline. All agree that an appellate court reviews "legal conclusion[s]," including the interpretation of § 3C1.1, "without the slightest deference." *U.S. Bank Nat'l Ass'n v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 965 (2018); *United States v. Cole*, 359 F.3d 420, 425 (6th Cir. 2004). And all agree that it reviews "historical" fact findings—"who did what, when or where, how or why"—for clear error.

*U.S. Bank*, 138 S. Ct. at 966; *Cole*, 359 F.3d at 425. But how should it review the application of the guideline to the facts—that is, the decision whether the historical facts rise to the level of obstruction under § 3C1.1?

Our cases have not been a model of clarity. Some have reviewed de novo the application of § 3C1.1 to the facts. *United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018). These cases reason that the issue qualifies as "a mixed question of fact and law," which we have traditionally answered without deference to the district court. *United States v. Bazazpour*, 690 F.3d 796, 805 (6th Cir. 2012); *cf. Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999) (en banc). Others have applied clear-error review. *United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002). These cases rely on 18 U.S.C. § 3742(e) (which directs appellate courts to "give due deference to the district court's application of the guidelines to the facts") and *Buford v. United States*, 532 U.S. 59 (2001) (which holds that § 3742(e)'s deference rule applies to guidelines that turn mostly on each case's facts, *id.* at 64–66). Still other cases have incorporated *both* standards, noting that courts should review de novo "whether facts constitute obstruction of justice," but also should "give due deference to the district court's application of the guideline to the facts." *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009) (citations omitted).

This conflict in our cases has good company. A sampling of out-of-circuit cases shows broad disagreement "as to whether a § 3C1.1 determination is to be reviewed as a question of fact or as a question of law." *United States v. Claiborne*, 676 F.3d 434, 440 n.1 (5th Cir. 2012) (Prado, J., concurring). Some cases evaluate this issue for clear error. *See, e.g.*, *United States v. McDonald*, 804 F.3d 497, 504–05 (1st Cir. 2015); *United States v. Arceo*, 535 F.3d 679, 687 (7th Cir. 2008); *United States v. Water*, 413 F.3d 812, 819 (8th Cir. 2005); *United States v. Garro*, 517 F.3d 1163, 1171 (9th Cir. 2008); *United States v. McKeighan*, 685 F.3d 956, 975 (10th Cir. 2012). Others (many from the same circuits) apply de novo review. *See, e.g.*, *United States v. Trinidad-Acosta*, 773 F.3d 298, 318 (1st Cir. 2014); *United States v. Armenta*, 883 F.3d 1005, 1009 (7th Cir. 2018); *United States v. Chavez*, 833 F.3d 887, 889 (8th Cir. 2016); *United States v. Castro-Ponce*, 770 F.3d 819, 821–22 (9th Cir. 2014); *United States v. Craig*, 808 F.3d 1249, 1260 (10th Cir. 2015); *United States v. Guevara*, 894 F.3d 1301, 1311 (11th Cir. 2018). And some cases have said that § 3742(e)'s "due deference" standard falls somewhere in between

de novo review and clear-error review.  *United States v. Henry*, 557 F.3d 642, 645 (D.C. Cir. 2009).

For our part, we question whether these two standards can be reconciled.  It is "confusing[]" to say that our review should be "*de novo* but deferential[]."  *United States v. Robinson*, 813 F.3d 251, 263 (6th Cir. 2016).  Some might call deferential de novo review an oxymoron, "sort of like 'green pastel redness.'"  John Hart Ely, *Democracy and Distrust* 18 (1980).  In another context, for example, the Supreme Court has held that "[w]hen de novo review is compelled, no form of appellate deference is acceptable."  *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991).  And, in this guidelines context, the Court has contrasted the two standards by asking whether an appellate court should "review the trial court's decision deferentially or *de novo*."  *Buford*, 532 U.S. at 60.  It did not answer "both."  It instead chose deferential review because of a district court's comparative advantage in resolving the issue posed by the specific guideline in that case (concerning whether prior convictions were related). *Id.* at 64–66.

*Buford*'s guideline-specific logic would suggest that courts should decide this standard-of-review question (de novo or deferential?) guideline-by-guideline.  In many respects, our court does just that.  We, for example, "accord due deference" to a conclusion that a firearm was "used or possessed in connection with another felony" under U.S.S.G. § 2K2.1(b)(6)(B), *United States v. Shanklin*, 924 F.3d 905, 919 (6th Cir. 2019), but review de novo a conclusion that a crime involved "a substantial risk of harm to human life under U.S.S.G. § 2D1.1(b)(5)(B)," *United States v. Whited*, 473 F.3d 296, 297 (6th Cir. 2007) (citation omitted).  Yet a case-by-case approach assumes that *Buford* remains good law.  Complicating matters further, when the Supreme Court started treating the guidelines as advisory, it severed the provision (§ 3742(e)) that contains the "due deference" text on which *Buford* relied.  *United States v. Booker*, 543 U.S. 220, 245 (2005).  Courts disagree over whether *Booker* excised this deference language. *Compare United States v. Lopez-Urbina*, 434 F.3d 750, 763 n.1 (5th Cir. 2005), *with Henry*, 557 F.3d at 644–45.  Our court continues to apply it.  *United States v. Simmerman*, 850 F.3d 829, 832 (6th Cir. 2017).  Indeed, it would be surprising for *Booker* to have eliminated this deference rule, given that it sought to delegate *more* sentencing discretion to district courts.  In all events,

the Supreme Court recently adopted context-specific logic like *Buford*'s to decide more generally the standard of review that should apply to mixed questions of law and fact. *U.S. Bank*, 138 S. Ct. at 966–67.

In this case, then, the correct standard may turn on whether an appellate court or a district court is "better position[ed]," *Buford*, 532 U.S. at 64, to decide whether the "historical" facts (as found by the district court) show that a defendant's actions meet § 3C1.1's "legal test" (as found by the appellate court). *U.S. Bank*, 138 S. Ct. at 965–66. Yet it is enough for us to flag tensions in the caselaw and pose potential inquiries for future panels. Here, Thomas's challenge fails even under de novo review, so we leave resolution of the standard of review for another day.

Now to the merits. Section 3C1.1 tells district courts to increase the offense level if a "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," so long as the defendant's conduct "related to" the "offense of conviction and any relevant conduct" or "a closely related offense." U.S.S.G. § 3C1.1. This text has clear elements. For starters, the "words 'obstruct or impede' are broad." *Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018). "They can refer to anything that 'block[s],' 'make[s] difficult,' or 'hinder[s].'" *Id.* (quoting dictionaries); *American Heritage Dictionary* 905, 1249 (3d ed. 1992). And § 3C1.1 does not require successful obstruction; it covers "attempted" obstruction too. Section 3C1.1's direct object next shows the proceedings that must be obstructed: "the administration of justice" for the "investigation," "prosecution," or "sentencing" of the offense. The adverb "willfully" lastly provides the required scienter. *Cf. Bryan v. United States*, 524 U.S. 184, 191 (1998).

Applying these elements to "sentencing," we have held that a defendant who makes materially false statements to the district court or a probation officer "for the purpose of obtaining a lighter sentence" commits obstruction. *United States v. Sweet*, 630 F.3d 477, 484 (6th Cir. 2011) (citation omitted). This reading comports with the Commission's view. Its commentary—which helps interpret § 3C1.1, *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc)—suggests that a defendant hinders the sentencing process if the defendant "provid[es] materially false information to a probation officer in respect to a

presentence . . . investigation for the court." U.S.S.G. § 3C1.1 cmt. n.4(H). As this language shows, when obstruction takes the form of a false statement, the statement must be "material": It must, "if believed," "tend to influence or affect" a sentencing decision (such as the proper prison term). *Id.* cmt. n.6; *cf. Kungys v. United States*, 485 U.S. 759, 772 (1988). If, by contrast, the statement has no chance of influencing such a decision, it cannot be said to have hindered it. *See United States v. Jones*, 159 F.3d 969, 981 (6th Cir. 1998).

Two contrasting examples show how § 3C1.1 works. We applied it to a defendant who lied about how he obtained codes to embezzle funds because his lies "minimize[d] the seriousness of his conduct" and could have affected his sentence. *Sweet*, 630 F.3d at 484. But we did not apply it to a defendant who lied about having a valid insurance license because that claim did not affect the sentencing process. *United States v. Smith*, 516 F. App'x 592, 599 (6th Cir. 2013).

Turning to this case, the district court properly invoked § 3C1.1. The court found as a fact that Thomas lied about his role in the conspiracy by falsely maintaining that he did not know of Cobb's actions and falsely describing his recruiting efforts. And his falsehoods were intentional lies, not mistakes from faded memories. The lies, "if believed," also would have "tend[ed] to influence" sentencing. U.S.S.G. § 3C1.1. cmt. n.6. They *actually* affected sentencing in one sense: The United States devoted time and resources to disprove them. And they *could have* affected sentencing in another: The district court might have opted for a lower sentence if it had believed Thomas. In short, Thomas's "attempt to minimize the seriousness of his conduct" hindered the sentencing process and could have affected the ultimate sentencing decision. *Sweet*, 630 F.3d at 484.

In response, Thomas offers two reasons why the lies were immaterial. *First*, Thomas says that any lies cannot be material because, even if believed, they would not have affected his guidelines range. Yet even if false information would not alter the guidelines calculations, it still could, if believed, "influence[] or affect[] the district court's determination of [the] sentence within the appropriate guideline range." *United States v. Wilson*, 197 F.3d 782, 786 (6th Cir. 1999). It could also affect a decision about whether to vary from the *advisory* guidelines.

Here, for example, the district court varied upward partially because of Thomas's leadership role; if it had believed Thomas, it may not have done so.

*Second*, Thomas says that any lies cannot be material because he admitted his leadership role in his guilty plea (before the lies) and at sentencing (after the lies). But the guilty plea did not discuss the details that Thomas told the probation officer. And any later clarification at sentencing came "after he was caught in a lie." *United States v. Romanini*, 502 F. App'x 503, 512 (6th Cir. 2012). Thomas "did not attempt to correct his false statements until he learned of the probation officer's recommendations." *Cf. Cobb*, 766 F. App'x at 230. By then, his lies had already affected sentencing.

The materiality of Thomas's statements distinguishes two cases on which he relies. *United States v. Yell*, 18 F.3d 581 (8th Cir. 1994); *United States v. DeFelippis*, 950 F.2d 444 (7th Cir. 1991). In *DeFelippis*, the defendant's lie concerned a collateral matter (about his employment history) that "could not have influenced his sentence, even if believed." 950 F.2d at 447. Thomas's lies, by contrast, concerned the crime itself. In *Yell*, the defendant lied to the probation officer about the amount of drugs distributed, but later confessed to the lie on his own initiative before it interfered with sentencing. 18 F.3d at 583. Thomas, by contrast, merely attempted to explain away his statements after the United States had compiled contrary evidence.

2. *Acceptance of Responsibility*. Thomas next argues he should have received a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. At the risk of trying the reader's patience, we note that our cases have also diverged on the standard of review for § 3E1.1. Some have said that "if the only issue presented is the propriety of applying the reduction to the uncontested facts, the decision is reviewed de novo." *United States v. Denson*, 728 F.3d 603, 614 (6th Cir. 2013) (citation omitted). Others have invoked the "deferential standard adopted by *Buford*" to review this issue for clear error. *United States v. Webb*, 335 F.3d 534, 538 (6th Cir. 2003). Here too, the right inquiry might ask whether an appellate court or a district court is better situated to decide if the undisputed facts prove that a defendant met the legal test for acceptance. *Buford*, 532 U.S. at 64. On that score, the commentary notes that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of

responsibility." U.S.S.G. § 3E1.1 cmt. n.5. But we can leave this question for another day as well. Thomas's claim also fails even under de novo review.

Section 3E1.1 tells the district court to reduce the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). This language's ordinary meaning generally bars a defendant from obtaining the reduction if the defendant lies about the nature of the offense. "To be 'responsible' is to 'answer for one's conduct.'" *United States v. Pipkin*, 304 F. App'x 468, 470 (8th Cir. 2008) (quoting dictionary); *see American Heritage Dictionary* 1537 (3d ed. 1992). And one does not answer for one's conduct by lying about it. As the commentary says, lies that justify § 3C1.1's obstruction enhancement "ordinarily indicate[] that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 cmt. n.4. Only in an "extraordinary" case may a defendant receive both an offense-level increase for obstruction and an offense-level decrease for acceptance of responsibility. *Id.*; *United States v. Jeross*, 521 F.3d 562, 581 (6th Cir. 2008).

The "extraordinary" case typically contains a common sequence: A defendant interferes early on with the investigation (triggering the obstruction enhancement), but later confesses to this obstruction and cooperates going forward (triggering the acceptance-of-responsibility reduction). *United States v. Gregory*, 315 F.3d 637, 640–41 (6th Cir. 2003); *United States v. Williams*, 176 F.3d 301, 311 (6th Cir. 1999). Many defendants, including Cobb, have tried—and failed—to fit their conduct into this two-step order of events. *See, e.g.*, *Cobb*, 766 F. App'x at 229; *Romanini*, 502 F. App'x at 511–12; *Jeross*, 521 F.3d at 582; *Wilson*, 197 F.3d at 786–87.

Thomas falls short too. His case resembles his cousin's. His obstruction (like Cobb's) occurred late (not early), after he had pleaded guilty and while the sentencing process was in full swing. *Cobb*, 766 F. App'x at 229–31. And he backtracked only after "the probation officer had decided not to recommend a decrease for acceptance of responsibility." *Id.* at 230. If anything, Thomas's case is easier than Cobbs's. Cobb "admitted that he had lied," but we still rejected the reduction. *Id.* at 229. Thomas did no such thing.

Thomas counters that he "pleaded guilty in a timely fashion" and "fully acknowledged responsibility for the extent of his involvement" in his objections to the presentence report, in his

sentencing memorandum, and at his sentencing hearing. Pleading guilty, however, does not alone justify this reduction. U.S.S.G. § 3E1.1 cmt. n.3. And Thomas's obstruction enhancement shows that he did not "fully acknowledge" the extent of his involvement.

Thomas also cites commentary from the 2018 guidelines noting that an unsuccessful "challenge" to a district court's finding of the "relevant conduct" does not automatically show that a defendant made a false denial that disqualifies the defendant from this reduction. U.S.S.G. § 3E1.1 cmt. n.1(A) (2018). But the 2016 guidelines, which apply to Thomas, lack this text. U.S.S.G. § 3E1.1 cmt. n.1(A) (2016). Regardless, the 2018 commentary adds that "[a] defendant who falsely denies . . . relevant conduct . . . has acted in a manner inconsistent with acceptance of responsibility." *Id.* Thomas did not just "challenge" relevant conduct; he "falsely denied" it.

3. *Upward Variance.* Thomas lastly challenges his 102-month sentence—which exceeded the guidelines range (70 to 87 months) by 15 months—as substantively unreasonable. This type of challenge asserts that a sentence is "too long" because the district court placed "too much weight on some of the § 3553(a) factors and too little on others." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (citation omitted). On the upside for Thomas, an above-guidelines sentence erases any presumption of reasonableness. *United States v. Robinson*, 892 F.3d 209, 212 (6th Cir. 2018). On the downside for him, the sentence does not trigger a presumption of *un*reasonableness. *Id.* He still must surmount a high bar to succeed on a substantive-reasonableness challenge even to an upward variance. While we consider "the extent of any variance" as a data point, we "give due deference to the district court's decision that the § 3553(a) factors" justify the variance. *Gall v. United States*, 552 U.S. 38, 51 (2007). We may reverse only if we find that the court abused its significant discretion. *United States v. Lanning*, 633 F.3d 469, 473–76 (6th Cir. 2011).

The many post-*Gall* cases in which we have rejected challenges to upward variances concretely show the difficulty in proving this type of claim. To list a few: *Robinson*, 892 F.3d at 212–17 (40-month variance); *United States v. Ushery*, 785 F.3d 210, 223–24 (6th Cir. 2015) (17-month variance); *United States v. Wendlandt*, 714 F.3d 388, 397–99 (6th Cir. 2013) (12-month variance); *United States v. Zobel*, 696 F.3d 558, 569–72 (6th Cir. 2012) (15-month variance); *Lanning*, 633 F.3d at 474–76 (18-month variance).

Thomas's claim suffers the same fate.  Whether or not we would have chosen his sentence, the district court's 15-month variance did not abuse its discretion.  It recognized that the guidelines set the initial benchmark for a sentence that would be "sufficient, but not greater than necessary" to achieve Congress's sentencing goals.  18 U.S.C. § 3553(a).  Yet the court found a guidelines sentence inadequate because of the need to deter crime and protect the public.  *Id.* § 3553(a)(2)(B)–(C).  Thomas had "started his involvement in this offense" (his third in the district) "almost immediately after being released from supervision on his second federal felony."  So Thomas was proceeding down the path of "life on the installment plan."  His lies also continued his lackadaisical attitude toward "staying on the right side of the law."  In short, the court supported its variance with rational reasons rooted in the § 3553(a) factors.

Thomas responds that the district court's obstruction enhancement and its refusal to apply the acceptance-of-responsibility reduction already set a range that exceeded the range (46 to 57 months) applicable to his "actual" fraud offense.  His reliance on that shorter range treats his lies as meaningless.  And the additional upward variance (after the guidelines adjustments accounted for his lies) rested on the "totality" of Thomas's conduct, including that the lies were part of a pattern of dishonesty.  *Gall*, 552 U.S. at 51.  The district court could find that this pattern necessitated a longer sentence (as compared to the guidelines baseline).

Thomas also notes that some codefendants received much shorter sentences.  True, § 3553(a)(6) directs courts "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  But that provision "is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct," not "disparities between" codefendants.  *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007).  In any event, Thomas fails to show that he was similarly situated to these codefendants—either in terms of their roles (Thomas had a leading role) or in terms of their records (Thomas had a substantial record).

We affirm.