NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0485n.06

Case No. 24-5209

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Dec 03, 2024 |
|  | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| LEROY CLOYD, | ) | THE WESTERN DISTRICT OF |
|  | ) | TENNESSEE |
| Defendant-Appellant. | ) |  |
|  | ) | OPINION |

Before:  SUTTON, Chief Judge; BUSH and MURPHY, Circuit Judges.

SUTTON, Chief Judge.  Leroy Cloyd challenges his below-Guidelines sentence for aiding and abetting the possession of machineguns.  Seeing no error, we affirm.

In May 2022, agents at the Bureau of Alcohol, Tobacco, Firearms and Explosives suspected Cloyd and Pariss Johnson of illegally distributing "switches," devices that convert semi-automatic pistols into machineguns.  An undercover agent contacted Johnson to purchase some switches.  Johnson gave the agent Cloyd's phone number, referring to him as the supplier.  In June, Cloyd met the agent in Memphis and sold him two switches.

Two months later, the agent texted Cloyd and Johnson about purchasing another switch.  Cloyd agreed to the sale and sent his girlfriend, Paris Brown, to complete the transaction.  Brown kept Cloyd on a FaceTime call during the sale.  After the sale, Cloyd called the agent and assured him that he could sell more switches in larger quantities.

Based on these sales, a grand jury indicted Cloyd on two counts of aiding and abetting the possession of a machinegun. *See* 18 U.S.C. § 922(o). He pleaded guilty to both.

During the probation office's presentence investigation, Cloyd downplayed his role in the two sales. As for the first, he told the probation office that "someone asked [him] to drop off something." R.98 at 8 ¶ 29. He explained that he did "not know[] what [he] was doing" and "dropped off something . . . without . . . knowing what it was." R.98 at 8 ¶ 29. As for the second, he said that Brown "called [him] and told [him] she was picking up something and dropping [it] off to someone." R.98 at 8 ¶ 29.

The probation office calculated a Guidelines sentencing range of 18 to 24 months, premised in part on a three-point reduction in Cloyd's offense level for accepting responsibility. *See* U.S.S.G. § 3E1.1. Before sentencing, the district court notified the parties that it might deny the reduction and enhance Cloyd's offense level for obstructing justice because he lied to the probation office about his role in the offense. *See id.* §§ 3C1.1, 3E1.1. The court also said it might enhance his offense level for supervising Brown. *See id.* § 3B1.1(c).

Cloyd objected to the district court's proposals. In the end, the court applied the leadership and obstruction enhancements, and denied Cloyd credit for accepting responsibility. All of this led to a new Guidelines range of 41 to 51 months. The court varied downward and imposed a sentence of 32 months.

At issue on appeal is whether the district court properly declined to reduce Cloyd's offense level for accepting responsibility. Cloyd does not challenge the leadership or obstruction enhancements. Although there had been tension in our cases over whether we review the denial of an acceptance-of-responsibility reduction afresh or for clear error, we recently discussed this

2

issue and clarified that deferential clear-error review applies. *United States v. Merritt*, 102 F.4th 375, 379–81 (6th Cir. 2024).

To receive the reduction, Cloyd must "clearly demonstrate[]" his acceptance of responsibility, a showing usually inconsistent with obstructing justice. U.S.S.G. § 3E1.1(a) & cmt. n.4; *United States v. Thomas*, 933 F.3d 605, 612 (6th Cir. 2019). Only "extraordinary cases" feature both an enhancement for obstruction and a reduction for accepting responsibility. U.S.S.G. § 3E1.1 cmt. n.4. We typically apply both only for the rare defendants whose obstructive conduct predates their indictments and who timely undo the obstruction and cooperate. *See United States v. Gregory*, 315 F.3d 637, 639–41 (6th Cir. 2003); *United States v. Williams*, 176 F.3d 301, 311 (6th Cir. 1999).

Cloyd does not fit this pattern. He lied to the probation office about his role in the two sales after he pleaded guilty, all while the investigation remained underway. Months passed until he finally addressed his lies, and, even then, he did so only to play them down to dispute the court's sentencing proposal, not to correct his misstatements. He insisted that he "at most[] minimized his culpability" and that "[a]ny momentary denial of relevant conduct seem[ed] to be an outlier" compared to his other behavior. R.124 at 5–6. Just like the defendant in *Thomas*, Cloyd's eleventh-hour lies and his attempts to trivialize them foreclose an acceptance-of-responsibility reduction. *See* 933 F.3d at 612.

Cloyd counters that his statement to the probation office was at most "a momentary lapse" and that his other efforts to accept responsibility, such as promptly pleading guilty, "far outweigh" this minor mistake. Appellant's Br. 14. We see nothing momentary or minor about it. He denied his role in the offense, cast blame on others, and did not acknowledge his lies until months later— and then only to minimize them. Despite his positive efforts, his lies cast serious doubts over

3

whether he accepted responsibility during the many months he sat on them. *See Thomas*, 933 F.3d at 612. He thus did not "clearly demonstrate[]" ownership of his conduct. U.S.S.G. § 3E1.1(a).

That the government supported the reduction in the district court does not alter this conclusion. Although the government's recommendation is relevant, it is not dispositive and does not overcome Cloyd's obstructive lies. *See United States v. Reed*, 788 F.3d 231, 234 (6th Cir. 2015).

We affirm.