NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0292n.06

No. 24-3845

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 12, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| ANTONIO L. HOOD, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: CLAY, KETHLEDGE, and STRANCH, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Antonio L. Hood appeals the district court's imposition of his above-Guidelines sentence as both procedurally and substantively unreasonable due to an alleged misapplication of the sentencing factors under 18 U.S.C. § 3553(a). For the reasons set forth below, we **AFFIRM** the district court's judgment and sentence.

## I. BACKGROUND

In 2018, Defendant Antonio Hood was indicted as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He received a twenty-four-month sentence of imprisonment followed by three years of supervised release, which he commenced serving in August 2020. In 2021, Hood violated the conditions of his supervised release by possessing weapons under disability and committing "three counts of aggravated menacing," which involved threatening a woman with a firearm. Sentencing Tr., R. 49, Page ID #167–68, 176. He also failed to notify his

probation officer about his contact with law enforcement. As a result of these violations, Hood received a fourteen-month supervised release revocation sentence, followed by two additional years of supervised release, commencing in December 2022.

In February 2024, Hood violated his supervised release for the second time by assaulting his girlfriend and receiving state charges for strangulation and domestic violence (the "new law violation" or "instant offense"). Hood disputed the strangulation charge and ended up pleading guilty in state court to attempted aggravated assault and domestic violence, receiving a concurrent 180-day state imprisonment sentence. Defense counsel also asked for a continuance in connection with the supervised release proceedings in federal court to allow the victim, Hood's girlfriend, to explain what happened. The district court granted the continuance but commented that the evidence of strangulation was "obvious" from the pictures and videos. Hr'g Tr., R. 50, Page ID #190.

In weighing the § 3553(a) sentencing factors, the district court considered the severity of Hood's new law violation, including details from the police report that Hood "punched [the victim] in the face multiple times," and "proceeded to choke [her] with both of his hands while she was pressed against the wall." Hr'g Tr., R. 49, Page ID #152. The victim managed to escape to the bathroom, and later noticed that Hood had broken the television and stolen a PlayStation. Hood fled the scene before police arrived. The district court noted that "[t]he responding officers observed abrasions around [the victim's] neck/throat area, a swollen upper lip, and swelling around . . . both eyes." *Id.* As evidence of the victim's injuries, the government introduced photographs showing the "very obvious" abrasions on her neck. *Id.* The district court thus concluded from the photos that the victim "suffered some serious . . . facial injuries." *Id.* at Page ID #154.

Although the victim did not testify at the hearing, the district court permitted defense counsel to summarize his prior phone call with her. The victim apparently told Defendant's attorney that she had been in a relationship with Hood for twelve years and shared children with him, and that he had never physically assaulted her during that time. She explained that, on the night of the incident, Hood attempted to leave the house with the PlayStation in a bag around his neck. When the victim tried to pull on the bag, Hood grabbed it and "scratched her on the neck." *Id.* at Page ID #163. She further claimed that Hood did not choke or punch her, and that she previously "lied to the police because [she] wanted [Hood] gone." *Id.* at Page ID #164.

Defense counsel cited other mitigating factors such as Hood's past employment at a pizza restaurant, the victim's statement about Hood being an "excellent father" to their children, and his negative drug-test results. *Id.* at Page ID #164–65. On account of these factors, defense counsel asked the district court to impose the minimum sentence. Hood also added that "[t]his whole situation . . . was blown out of proportion," and denied having ever punched a woman in the face. *Id.* at Page ID #165. He said that the victim had been "super intoxicated at the time [of the incident]" and that it would "never happen again." *Id.* When the district court asked him how the victim's injuries occurred, Hood answered, "I don't know," and "It had nothing to do with me." *Id.* at Page ID #166. As a final statement to the court, Hood mentioned his desire to return to work and continue caring for his children and also noted that he did not steal or use drugs.

The district court responded that this new law violation was Hood's "second go-around," and that his prior violation involved attempting to possess weapons under disability and aggravated menacing using a firearm. *Id.* at Page ID #167. On that point, Hood explained that he "cussed out [his] neighbor for putting their hands on [his] kids," and also denied having a firearm, even though

the violation report said that he forfeited two firearms. *Id.* Hood did acknowledge a woman's accusation that he threatened her with a firearm but denied possessing that firearm.

In response to Hood's comments, the government referenced the victim's 911 call immediately after the assault and said that the victim told police that Hood "punched and choked her" during an argument about "the kids being disrespectful." *Id.* at Page ID #171. The government pointed out that, unlike defense counsel's description of the incident, their argument had "nothing to do with a PlayStation." *Id.* The government also encouraged the court to watch the body camera footage from the scene, which depicted the victim as "well-spoken" and "not intoxicated" as Hood claimed. *Id.* While the victim did not seek medical attention for the "strangulation and obvious abrasions around her neck and throat area," the police report indicated that she "completed a victim statement form." *Id.* at Page ID #172. Given the victim's same-night statements to police and corroborating injuries, captured in both police photos and body camera footage, the government concluded by saying that Hood's denials of physical assault were not credible.

The district court noted that it "ha[d] the benefit of [Hood's] prior [Presentence Investigation ("PSI")]" and knowledge of his "prior violations" at sentencing. *Id.* at Page ID #175. It also indicated that although Hood had served the entire 180 days for his state convictions, this sentence would be a "separate sanction for separate misconduct." *Id.* The district court cited Hood's previous violations of failing to notify his probation officer of contact with law enforcement, possessing weapons under disability, and aggravated menacing, for which he served fourteen months, thus demonstrating that he had not been "fully compliant" on supervision. *Id.* at Page ID #176.

The district court favored treating Hood's new violation of law as a Grade A violation, with his criminal history category of III, Guidelines range of eighteen to twenty-four months, and a twenty-four-month statutory maximum. The district court thus considered the probation department's recommendation for a twenty-four-month sentence. The court agreed with the government that Hood's "denials of not putting any hand on [the victim] [was] not borne out of evidence" and thus "not credible." *Id.* at Page ID #177. On the contrary, the district court stated that the photos taken by responding officers indicated that the victim "was clearly strangled" and "had been assaulted in some fashion" because of the "bruising around her neck." *Id.* at Page ID #178.

Because Hood pleaded guilty to aggravated assault instead of strangulation, the district court granted Hood's request to treat the offense as a Grade C violation with a lower Guidelines range of five to eleven months; however, the court commented that "technically under the statute or under the law [it] could hold [Hood] to a Grade A [violation]" given the victim's serious injuries. *See* Hr'g Tr., R. 49, Page ID #159. The district court also informed the parties that it could impose an above-Guidelines sentence. Even so, the court opined that "the evidence [of strangulation] [was] overwhelming based on th[e] photos." *Id.* at Page ID #178.

The district court also commented on the rash of men "assaulting their significant others" while on supervised release, which could "not be tolerated." *Id.* The court took issue with Hood's failure to take accountability for the instant violation, noting that it might have "thought a bit differently" if Hood had simply admitted his behavior. *Id.* Again, the district court emphasized that Hood's claim that he did not assault the victim was "not credible in the least." *Id.*

Still, the district court declined to impose the maximum sentence of twenty-four months, as proposed by the probation department, and instead sentenced Hood to eighteen months followed

by an additional year of supervised release. *Id.* The court further clarified that the seven-month upward variance from eleven to eighteen months was "based on [Hood's] prior record and history while on supervision" and "the injuries to the victim," which alone justified "an additional period of incarceration." *Id.* at Page ID #180. The district court also observed that the previous fourteen-month sentence "apparently did not have a deterrent effect on [Hood]." *Id.* This appeal followed.

## II.  DISCUSSION

### A.  Procedural Reasonableness

Defendant argues that his sentence was procedurally unreasonable because the district court "disregarded the 18 U.S.C. § 3553(a) factors." Appellant Br., ECF No. 23, 10. Specifically, he asserts that the district court ignored "his character or offense of conviction" and "the different sentences available." *Id.* at 11–12. Defendant also states that the district court "did not consider whether the upward variance imposed on [him] would create an unwarranted sentence disparity" among individuals with similar convictions and histories. *Id.* at 12. The government responds that the district court adequately considered and explained its reasoning for imposing the above-Guidelines sentence, citing factors such as Defendant's criminal history, non-compliance with supervised release, the severity of his physical assault on the victim, and the need for deterrence. It also states that the district court properly considered Defendant's mitigating circumstances as well as the physical evidence of domestic assault. We agree that the district court committed no procedural error.

"The touchstone of appellate review of a . . . sentencing decision is reasonableness, a concept that has both a procedural and a substantive component." *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). This Court reviews the reasonableness of a criminal sentence for an abuse of discretion. *See id.* Before

turning to substantive reasonableness, we first look to see if the district court committed any "significant" procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *See Gall*, 552 U.S. at 51.

A defendant can preserve a challenge to procedural reasonableness by objecting in the district court; however, the failure to object triggers plain-error review. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). Under this demanding standard, a defendant may obtain relief "only if the error is 'plain' and 'affects substantial rights.'" *Id.* (citing Fed. R. Crim. P. 52(b)). Because Defendant Hood objected only to the upward variance portion of his sentence before the district court, *see* Sentencing Tr., R. 49, Page ID #181, we review his other arguments regarding the § 3553(a) factors for plain error. *See Vonner*, 516 F.3d at 385.

The record clearly shows that the district court adequately considered and explained the § 3553(a) sentencing factors. At sentencing, the district court emphasized Hood's criminal history and past violations on supervised release, which included threatening a woman with a firearm. The district court also informed the parties that it benefitted from the information in Hood's prior PSI, further indicating its consideration of his criminal history. *Id.* at Page ID #175. The district court also considered the severity of Hood's instant offense of domestic violence and attempted aggravated assault (formerly strangulation). This is evidenced by the court's attention to the victim's injuries and corroborating police photographs, and its mention of the upsurge in "men assaulting their significant others" while on supervised release. *Id.* at Page ID #178. The district court was clearly disturbed by the victim's facial injuries and described the instant offense as

Hood's "most serious violation." *Id.* at Page ID #150. Moreover, the district court clarified that the seven-month upward variance was "based on [Hood's] prior record and history while on supervision," "the injuries to the victim," and because the previous fourteen-month sentence "did not have a deterrent effect" on him. *Id.* at Page ID #180.

Hood attempts to argue that the district court "selectively focused" on his criminal history and the severity of the instant offense to the exclusion of other § 3553(a) sentencing factors, such as his underlying federal conviction, mitigating circumstances, and alternative sentence options. Appellant Br., ECF No. 23, 11. Contrary to Hood's assertions, the district court considered his underlying federal conviction when it referenced Hood's prior PSI at sentencing and spoke at length about his criminal history. The record also shows the district court's ample consideration of Hood's mitigating circumstances since it allowed defense counsel to recount the many details from his phone call with the victim, during which she claimed to have been intoxicated during the incident with Hood, denied having ever been punched or choked by Hood, admitted lying to the police simply because she wanted Hood out of the house, and described Hood as an "excellent father" to her children. Sentencing Tr., R. 49, Page ID #162–65. The district court also listened to Hood's explanation for the incident, including his denials of injuring the victim and purported lack of knowledge about how she "got beat in the face." *Id.* at Page ID #166. In addition, the court heard other mitigating information about Hood's relationship with his children, his employment status, and his abstention from theft and drug activity. *Id.* at Page ID #167. The record further illustrates that the district court considered alternative sentence options, particularly the probation department's recommendation for a longer, twenty-four-month sentence based on photos and police reports of the victim's injuries. Although the district court concluded that the evidence was sufficient to support a Grade A violation for the instant offense, it ultimately chose

the more lenient route by treating it as a Grade C violation and sentencing Hood to only eighteen months instead of twenty-four.

Hood's argument also incorrectly suggests that the district court cannot weigh certain § 3553(a) factors more heavily than others based on the relevant circumstances. We have long established that "[n]ot all [factors] are important in every sentencing; often one or two prevail, while others pale." *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007); *see also United States v. Potts*, 947 F.3d 357, 371 (6th Cir. 2020) (noting that we do not require "magic words" or a "mechanical recitation" of all sentencing factors as long as the record shows that the district court considered them) (citing *United States v. Dexta*, 470 F.3d 612, 614–15 (6th Cir. 2006)). Because the record affirmatively shows the district court's consideration of the § 3553(a) factors, we find no procedural error.

## B. Substantive Reasonableness

Defendant Hood also argues that his eighteen-month sentence was substantively unreasonable. He states that the district court "gave too much weight" and "appeared fixated" on his violation conduct—the strangulation charge—and "appeared to be punishing [him]" for that offense instead of the breach of trust associated with his supervised release. Appellant Br., ECF No. 23, 14–15. The government argues that Hood's above-Guidelines sentence was supported by the totality of the circumstances, particularly his criminal history and violent conduct towards women. We agree that Hood's sentence was substantively reasonable.

This Court reviews the substantive reasonableness of a prison sentence for an abuse of discretion, and accounts for "the totality of the circumstances, including the extent of any variance from the Guidelines range." *United States v. Dunnican*, 961 F.3d 859, 880 (6th Cir. 2020) (quoting *Gall*, 552 U.S. at 51–53). For within Guidelines sentences, we may apply a rebuttable presumption

of reasonableness; however, if the sentence is outside the Guidelines range, "[we] may not apply a presumption of unreasonableness." *Gall*, 552 U.S. at 51; *see United States v. Thomas*, 933 F.3d 605, 613 (6th Cir. 2019) (noting that a criminal defendant "still must surmount a high bar to succeed on a substantive-reasonableness challenge even to an upward variance"). "The fact that [this Court] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51. Rather, a successful substantive reasonableness challenge will show that "the [district] court placed too much weight on some of the § 3553(a) factors and too little on others," resulting in an incarceration sentence that is either too long or too short to achieve its sentencing goals. *See United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).

In *United States v. Lee*, we held that a defendant's incarceration sentence was substantively unreasonable when the district court "drastically var[ied] upward" by twenty-three months after the defendant was caught in possession of a stolen firearm, almost doubling the length of his original sentence. 974 F.3d 670, 675–78 (6th Cir. 2020). We found that the circumstances in *Lee* did not warrant such extremes because the district court placed too much weight on the defendant's criminal history and parole violations, which "bore no meaningful relationship" to the firearm offense and did not demonstrate "a specific need for deterrence beyond that already captured by the guidelines." *Id.* at 677. Significantly, this was the defendant's first firearm offense, he had not been convicted of a violent crime in fifteen years, and there was nothing else "uniquely troublesome about [his] criminal history." *Id.* at 678–80. Under these circumstances, we emphasized that the extent of the variance was substantively unreasonable and appeared improperly motivated by the district court's concern that "the defendant [would] again violate parole, not that he [would] endanger the public." *Id.* at 680–81.

The present matter is easily distinguishable from *Lee*. At first glance, there is an obvious contrast between the extreme nature of the district court's upward variance in *Lee*, at twenty-three months, and the one here, at just seven months. But here we also face "a specific need for deterrence" that was absent in *Lee*, since Defendant Hood's instant violation involved physically assaulting a woman. *Id.* at 677. Domestic violence is a "uniquely problematic" concern that was not previously accounted for in Hood's state sentence. *Id.*; Sentencing Tr., R. 49, Page ID #175 ("[T]his is a separate sanction for separate misconduct . . . ."). Further, the strangulation charge was Hood's "second violent violation" of supervised release, which was not a concern in *Lee*. Sentencing Tr., R. 49, Page ID #158; *Lee*, 974 F.3d at 678–80. Because this newfound call for deterrence was not originally captured by the Guidelines, the district court did not need to "emphasize[] the relationship between the instant offense and [Hood's] prior offenses" when it imposed the seven-month upward variance.[1] *Lee*, 974 F.3d at 677. Accordingly, the district court did not abuse its discretion in imposing Hood's eighteen-month sentence.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment and sentence.

---

[1] The district court did allude to the fact that Hood's prior offense also involved violent conduct toward a woman, during which he reportedly "threatened [her] with a firearm." Sentencing Tr., R. 49, Page ID #167–68.