NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0383n.06

Case No. 23-1635

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Aug 01, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| ERVIN THORNTON, II, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; SILER and WHITE, Circuit Judges.

SILER, J., delivered the opinion of the court in which SUTTON, C.J. and WHITE, J., concurred. WHITE, J. (pg.7), delivered a separate concurring opinion.

**SILER, Circuit Judge.** The First Step Act retroactively lowered the statutory penalties for many crack-cocaine crimes. Ervin Thornton, II, now serving life sentences for murder and drug offenses, seeks a reduction under § 404 of the First Step Act of 2018. The district court denied relief after finding that his drug counts involved only powder cocaine—offenses the Act does not cover. Because the conviction documents support that finding and because the court committed no clear error in reading the historical record, we affirm.

## I.

In the mid-1990s, Thornton helped run a cocaine pipeline in Flint, Michigan. Jewell Allen bought powder cocaine from Lee Strickland and delivered the drugs to Thornton and Tederick Jones, who "cooked" portions of it into crack for street sale. *United States v. Thornton*, 234 F.3d 1271, 2000 WL 1597928, at *1 (6th Cir. 2000) (per curiam) (table). When Strickland landed in

federal court on his own drug indictment, Allen feared that his supplier might testify against him, so he paid Thornton and Jones $5,000 each to make sure Strickland never talked. Armed with handguns, the pair riddled Strickland's car with bullets, killing Strickland and his sister and wounding a third passenger. The murders did not slow Thornton's trafficking, as he kept selling "both crack and powder cocaine and marijuana" from several locations. Police searches later uncovered quantities of all three types of drugs together with the murder weapon.

In April 1998, a second superseding indictment charged Thornton with 10 counts. Relevant here, Count 1 alleged a conspiracy "to distribute cocaine . . . and marijuana," in violation of 21 U.S.C. §§ 846 and 841(a)(1), and Count 8 charged him with possession with intent to distribute "cocaine," in violation of 21 U.S.C. § 841(a)(1). The indictment never specified whether the "cocaine" was powder, crack, or both, and it cited no penalty subsection of § 841(b).

At trial, the government introduced evidence of both forms: witnesses described Thornton cooking powder into crack and selling each; agents seized rocks of crack, baking soda, a scorched measuring cup, and other tools of the trade; and the prosecutor reminded jurors of "the crack or cocaine end of" the case in closing argument. The court instructed the jury that "cocaine and crack cocaine are Schedule II controlled substances." The jury convicted on all counts.

Before sentencing, the prosecutor sent Probation a letter stating that Thornton faced "a ten-year statutory minimum pursuant to 21 U.S.C. § 841(b)(1)(A)(ii) and (iii)," thus invoking the penalty provisions for five kilograms of powder or 50 grams of crack. The presentence report found Thornton responsible for "over 1.5 kilograms of crack cocaine," producing a base-offense level of 38. It made no separate powder-quantity finding.

Thornton objected, insisting that the record was "horribly conflicted" and showed only that he possessed substantial amounts of powder cocaine, not the requisite crack quantity.

2

The government countered by reading transcript excerpts that pegged the total at far more than 1.5 kilograms of crack. The court overruled the objection, noting that the record contained evidence of both "vast amounts of powder cocaine" and more than 1.5 kilograms of crack. After adopting the PSR without change, it imposed concurrent life sentences on Count 1 (the drug conspiracy), Count 2 (the murder conspiracy), and Counts 3 and 4 (murder), to be served concurrently with a 40-year term on Count 8 (possession with intent to distribute cocaine), 20-year terms on Counts 6 (distribution of cocaine) and 10 (possession with intent to distribute cocaine), and 5-year terms on Counts 9 and 11 (possession with intent to distribute marijuana), along with a 5-year term on Count 5 (firearm use during the commission of a felony drug offense), to be served consecutively to all other sentences.

This court affirmed the convictions and sentences in 2000. *Thornton*, 2000 WL 1597928, at *3. Two decades later Thornton sought compassionate release and First Step Act relief. The district court first granted compassionate release and deemed the § 404 motion moot, but we reversed. *United States v. Thornton*, 2023 WL 2293101, at *2 (6th Cir. Mar. 1, 2023). On remand the district court denied the renewed § 404 motion, concluding that the indictment's reference to "cocaine" alone meant powder and that sentencing-stage crack findings could not transform the statute of conviction. A follow-up motion for reconsideration met the same fate. Thornton appeals.

## II.

Relief under § 404 comes in two steps. Step one asks whether the defendant's drug count is a "covered offense," meaning an offense whose statutory penalties the Fair Sentencing Act altered. First Step Act of 2018, Pub. L. No. 115–391, § 404, 132 Stat. 5194, 5222 (2018). That is a historical question we review for clear error. *United States v. Thomas*, 933 F.3d 605, 608 (6th

Cir. 2019). A finding survives unless we are "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citation and quotation marks omitted). Only if the defendant clears that threshold do we proceed to step two, where we review the district court's ultimate decision to grant or deny a sentence reduction for abuse of discretion. *United States v. Maxwell*, 991 F.3d 685, 689 (6th Cir. 2021). Because Thornton's appeal turns entirely on step one, our task is to decide whether the district court's powder-cocaine finding is clearly erroneous.

The relevant penalty statute, 21 U.S.C. § 841(b)(1)(A)(ii)–(iii), distinguishes between cocaine powder and "cocaine base" (crack). Eligibility "turns on the statute of conviction alone"— as reflected in the indictment, verdict, and judgment. *United States v. Boulding*, 960 F.3d 774, 781 (6th Cir. 2020).

The indictment here charged a conspiracy "to distribute cocaine . . . and marijuana" (Count 1) and possession with intent to distribute "cocaine" (Count 8). It never mentioned "cocaine base." The verdict and judgment mirror the same language. Based on these documents, the district court did not clearly err in finding that Thornton was convicted for distributing powder cocaine.

Thornton advances four reasons to look past the indictment. First, he stresses that he was tried and sentenced prior to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), so drug type and quantities were questions for the court, not elements that the jury must decide. He believes that the district court clearly erred by disregarding the presentence report and findings at sentencing, which held him responsible for "over 1.5 kilos of crack cocaine" and applied the § 841(b)(1)(A)(iii) minimums when computing the guidelines. But the indictment, verdict, and judgment were all clear on the drug that he was charged with, namely, powder cocaine. The mere fact that the district court used Thornton's crack cocaine conduct for sentencing purposes does not make him eligible

4

under the statute. Even if the district court *could* consider the sentencing materials, it did not clearly err by finding the charging materials to be better evidence of the statute of conviction.

Second, Thornton cites trial evidence of crack rocks and "cooking" paraphernalia and notes that the jury was told powder and crack are both Schedule II substances. But *Boulding* forecloses any argument that general trial evidence can "back-fill" an element omitted from the indictment. *Boulding*, 960 F.3d at 781. Where, as here, the charging document required no finding on drug type, neither the breadth of the proof nor the generic instruction answers the statutory-penalty question.

Third, Thornton relies on a 1998 presentence letter in which the prosecutor stated that Thornton faced the 10-year minimums of § 841(b)(1)(A)(ii) (powder) and (iii) (crack). A prosecutor's statement, however, is not a judicial determination; it never amended the indictment and was never adopted by the court. Because the statement was never adopted by the court, it cannot constitute a "court's determination" that might trigger judicial estoppel. *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217 n.3 (6th Cir. 1990).

Fourth, Thornton argues that the rule of lenity should apply to resolve any ambiguity about the covered offenses in his favor. But Thornton fails to identify any ambiguity in the statutory text. Instead, he challenges whether the district court's powder cocaine finding constitutes clear error. And the rule of lenity "does not apply to factual ambiguities." *United States v. Anderson*, 517 F.3d 953, 962 (7th Cir. 2008).

Because Counts 1 and 8 rest on § 841(b)(1)(A)(ii), a provision the Fair Sentencing Act did not change, they are not covered offenses. The district court's finding is not clearly erroneous, and we need not reach step two.[1] The judgment is **AFFIRMED**.

---

[1] Because we hold that Counts 1 and 8 are not "covered offenses," we need not reach the government's alternative reliance on the concurrent-sentence doctrine.

**WHITE, Circuit Judge, concurring.** Because Thornton was charged, tried, convicted, and sentenced before *Apprendi v. New Jersey*, 530 U.S. 466 (2000), it is unclear whether he was sentenced for a "covered offense" under the First Step Act of 2018, Pub. L. No. 115–391, § 404, 132 Stat. 5194, 5222 (2018). As the majority observes, the indictment and judgment refer to cocaine without specifying powder cocaine or crack cocaine, and without reference to a penalty provision that would clarify the type of cocaine at issue. Under these circumstances, I agree with the Third Circuit that the proper approach is to examine the entire record to determine the statute of conviction. *See United States v. Coleman*, 66 F.4th 108, 110–12 (3d Cir. 2023).

The sentencing record provides support for the conclusion that Thornton was convicted of a covered offense. At the time of his conviction, a life sentence for a powder-cocaine offense required a finding that the defendant was responsible for at least five kilograms of powder-cocaine. 21 U.S.C. § 841(b)(1)(A)(ii)(1998). But the district court made no such finding when it sentenced Thornton to life on Count 1; the only drug-quantity finding it made was that Thornton was responsible for at least 1.5 kilograms of crack cocaine, which exceeded the then-applicable 50-gram threshold for a life sentence based on a crack-cocaine conviction. *Id.* § 841(b)(1)(A)(iii).

I nonetheless concur because the record, taken as a whole, can reasonably be viewed as supporting either conclusion—that Thornton was convicted of a crack-cocaine offense, or that he was convicted only of a powder-cocaine offense. It therefore was not clear error for the district court to hold that Thornton was ineligible for § 404 relief because he was not convicted of a covered offense.